## In re STODDARD BROS. LUMBER CO.

### (District Court, D. Idaho, C. D. March 20, 1909.)

1. PARTNERSHIP (§ 241*)—RETIRING PARTNER—LIABILITY FOR FIRM DEBTS—ESTOPPEL.

    The principle underlying the responsibility of a partner, who retires without publishing proper notice, to subsequent creditors of the firm, is that of estoppel, implying that the partner induced or knowingly permitted such subsequent creditors to extend credit to the firm on the assumption that the partner was a member thereof.

    [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 479½, 480; Dec. Dig. § 241.*]

2. ESTOPPEL (§ 110*)—DEFENSES—PLEADING.

    Estoppel is a defense, which must be affirmatively pleaded and proved by one seeking to avail himself thereof.

    [Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 300; Dec. Dig. § 110.*]

3. PARTNERSHIP (§ 241*)—DORMANT PARTNER—WITHDRAWAL—NOTICE.

    An unknown or dormant partner need not give notice of his withdrawal from the firm.

    [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 480; Dec. Dig. § 241.*]

4. PARTNERSHIP (§ 241*)—RETIRING PARTNER—NOTICE OF WITHDRAWAL—SUBSEQUENT CREDITORS.

    Since one holding himself out as a partner, though he be not such, is only liable to those who deal with the firm in the belief that he is a partner, subsequent creditors of a firm were not entitled to assert the responsibility of a former partner. who retired without publishing notice of his withdrawal, unless such creditors knew that the partner represented himself to be a member of the firm and were misled by the fact that the formal notice of withdrawal had not been given.

    [Ed. Note.—For other cases, see Partnership, Dec. Dig. § 241.*]

5. EVIDENCE (§ 459*)—PAROL EVIDENCE—WRITTEN CONTRACTS—NOTES OF FIRM.

    Parol evidence is admissible to show that certain notes signed by the individual members of the firm evidenced a partnership obligation and that the form of the signature was mere inadvertence, so as to establish the notes as a firm debt.

    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1909, 2111; Dec. Dig. § 459.*]

6. PARTNERSHIP (§ 217*)—DEBTS—NATURE OF OBLIGATION—EVIDENCE.

    The terms of a note signed by the individual members of a firm will control in determining the nature of the obligation as to whether it is a debt of the firm or of the partners signing it, unless the prima facie case made by the instrument is overcome by clear and convincing evidence.

    [Ed. Note.—For other cases, see Partnership, Dec. Dig. § 217.*]

7. PARTNERSHIP (§ 146*)—DEBTS—NOTES FOR INTEREST OF RETIRING PARTNER.

    Notes given by a remaining to a retiring partner in payment for the latter's interest, sold to the partner making the notes, and not to the firm, were not firm obligations.

    [Ed. Note.—For other cases, see Partnership, Dec. Dig. § 146.*]

8. BANKRUPTCY (§ 326*)—LIENS—VOLUNTARY RELEASE—LIABILITY OF CREDITOR.

    Where a creditor of a firm, holding a firm mortgage as security for $12,000, voluntarily released the same, that the bankrupt firm might sell the property and out of the proceeds pay firm debts on which the claimant was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

liable as surety and such debts were paid to the amount of $11,625, the claimant was liable for $375, the amount lost to creditors by such voluntary release.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 326.*]

9. BANKRUPTCY (§ 477*)—CLAIMS—ATTORNEY'S FEES.

Claims for fees by attorneys for objecting creditors should be filed with the referee in the first instance, so that any party aggrieved by the referee's ruling thereon may have the same reviewed by appropriate proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 477.*]

C. H. Finn, Hawley, Puckett & Hawley, and Frank Estabrook, for George Stoddard.

L. F. Clinton, Neal & Kinyon, Griffiths & Griffiths, and Rice, Thompson & Buckner, for objecting creditors.

DIETRICH, District Judge. Upon the petition of certain creditors the Stoddard Bros. Lumber Company, a partnership, was, on August 19, 1908, adjudicated a bankrupt. It was alleged that the firm consists of A. K. Stoddard and Charles Moslander; but no adjudication of their insolvency as individuals was sought or obtained. Thereafter George Stoddard, a brother of A. K. Stoddard, presented for allowance several claims, evidenced chiefly by promissory notes, to the allowance of which objections were made by some of the creditors. A hearing was had, resulting in an order by the referee rejecting all of the claims. This ruling is now submitted for review.

1. A general objection running to all of the claims is that the claimant is in fact a member of the bankrupt firm. I do not find that this contention is supported by the evidence.

2. Another general objection argued is that George Stoddard, if not in reality a member of the firm, should be held responsible upon the theory that he held himself out as such. In support of this position, the objecting creditors rely mainly upon the fact that the claimant was at one time a member of the partnership, and that after withdrawing, in 1897, he failed to give notice of dissolution, and permitted the business to continue under the original name of Stoddard Bros. Lumber Company; also that he continued to render assistance to the firm in procuring loans, and failed to see that its obligations to him were fully disclosed by its books and records. Apparently, more for this than for any other reason, the referee rejected the claims.

The objection was not originally specified as one of the grounds relied upon, and it was not until the evidence was practically closed that the creditors evinced a purpose to assert it. But, upon the assumption that it was interposed in time, what effect should now be given to the objection? The principle underlying the responsibility of a partner, who retires without publishing proper notice, for the obligations of the firm subsequently incurred, is that of estoppel. He is held liable, not because he has in truth contracted, but because it would be inequitable and against good conscience to permit him to deny that he contracted. Thompson v. Bank, 111 U. S. 529, 4 Sup. Ct. 689, 28 L. Ed. 507.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This, of course, implies that he has induced or knowingly permitted the person who is charging him with responsibility to extend credit upon the assumption that he was a member of the firm receiving the credit. If, however, an objection of this kind, when raised by a single creditor, may avail to defeat the allowance against a bankrupt estate of the claim of a person sought to be estopped, the conduct of the claimant, amounting to estoppel as to one creditor, may operate vicariously as an estoppel in favor of all other creditors, regardless of the question whether or not they have been misled or deceived by any action or inaction on the part of the claimant, or whether they had any knowledge of the "holding out." In this particular case, if it be assumed that the evidence discloses that George Stoddard induced some one of these objecting creditors to extend to Stoddard Bros. Lumber Company credit, upon the belief that he was a responsible member of the firm, why should his claim be postponed to those of other creditors who were not so deceived? If claimant has misled any creditor, it does not follow that his mouth is closed to deny responsibility to some other creditor. But the absolute disallowance of his claim in effect charges him with responsibility to all creditors alike. It is thought that, as a general rule, this objection does not furnish sufficient ground for the rejection of a claim otherwise just and valid. At most, it can be asserted only by a creditor in whose favor the facts constitute an estoppel against the claimant.

It is true that, upon the withdrawal of George Stoddard in 1897, no formal or public notice was given of that fact, and no change was made in the firm name. The only notice which was given was to the Dun and the Bradstreet Mercantile Agencies. It is, however, not pretended that any of the present creditors had, prior to George Stoddard's withdrawal, ever transacted business with the firm, and, while there was no change in the business name, it is not contended that, either before or after the claimant's withdrawal, his name ever appeared upon the letter or bill heads or in other advertisements of the partnership business. Apparently it is conceded by the objecting creditors that the record is insufficient to establish estoppel against the claimant, unless, it being shown that the claimant was at one time a member of the firm and that notice of dissolution had not been given, the court will indulge the presumption that all creditors, in extending credit, acted upon the assumption that he was a member of the firm when the credits were given. But estoppel is a defense, to be affirmatively pleaded and proved by him who would avail himself of it. Upon behalf of the objecting creditors it is argued that Strecker v. Conn, 90 Ind. 469, lays down a contrary rule, and in effect holds that there is a presumption in favor of the creditor where the withdrawing member of the firm has not published notice of the dissolution. The question in that case was as to whether or not it was necessary for the creditor to show that he gave special credit to the "financial ability" of one holding himself out as a partner. In other words, it was contended by the party sought to be charged as a partner that the creditor asserting estoppel was bound to show that the credit would not have been extended, but for his reliance upon the financial ability of the person so holding himself out. From other parts of the opinion

it is made clear that it was not intended to hold that such a presumption in favor of the creditor as is here contended for could be indulged. It is expressly said that:

"If one knowingly permits himself to be held out to the world as a partner, he becomes liable to those who deal with the firm in the belief that he is a partner as fully as if he were in fact a partner."

In other words, one holding himself out as a partner, even though he be not such, is "liable to those who deal with the firm in the belief that he is a partner." It is true that in Thompson v. Bank, supra, and Sun Insurance Company v. Kountz Line, 122 U. S. 583, 7 Sup. Ct. 1278, 30 L. Ed. 1137, it was observed that the "holding out" may be so public and so long continued as to justify the inference that one dealing with the partnership knew of and relied upon it; but no presumption is thus implied. Whether the creditor knew that the person against whom he seeks to recover represented himself to be a member of the firm receiving credit, and whether, to his injury, he acted upon such knowledge, are questions of fact to be proved, not necessarily by direct testimony, but by evidence, either positive or circumstantial. Here the record discloses no evidence from which the court can reasonably infer that any one of the creditors, in dealing with the bankrupt firm, relied upon the responsibility of George Stoddard. It is not even shown that any one of them at any time knew that he ever was a member of the firm. That being the case, how could they be misled by the mere fact that he did not give formal notice in the newspapers that he had withdrawn from the firm? The case is thus brought within the general rule that an unknown or dormant partner need not give notice of his withdrawal. Shumaker on Partnership, p. 332.

Moreover, the failure to give notice by publication does not necessarily impose responsibility. "We think it is not an absolute, inflexible rule that there must be publication in a newspaper to protect a retiring partner." Lovejoy v. Spafford, 93 U. S. 430, 23 L. Ed. 851.

It is concluded that this objection should be overruled without prejudice to the right of any creditor, in a proper proceeding, to assert the responsibility of the claimant, George Stoddard, for any claim against the firm for which he may be liable by reason of the fact that he held himself out as a member of the firm, if in fact he did so hold himself out.

3. Two notes, dated April 5, 1904, each for $6,000, are signed, not in the firm name, but by the individual members of the firm, namely, Alexander K. Stoddard and Charles Moslander; and it is contended on behalf of the creditors that these notes are not valid claims against the bankrupt firm, but are only obligations of the individual members thereof, and that therefore they cannot be paid until the creditors of the firm, as such, are fully satisfied. Over objections, oral evidence was received to show that the consideration of the notes was a firm obligation; and it is argued that such evidence is inadmissible, in that it tends to contradict and vary the terms of a written contract. There is much to be said both for and against the view that oral evidence cannot be received for this purpose; but my conclusion is that, while the form of the contract makes a prima facie case of individual liability only, oral

169 F.—13

evidence may be received to show the real transaction. And where it appears, free from doubt, that the consideration of the instrument passed not to the individuals, but to the firm, and that it was not given or received for the purpose of substituting an individual for a firm obligation, and that the form was purely accidental, the obligation is provable against the partnership estate. Here there is no evidence that either party intended to substitute an individual for a firm obligation, or that either party understood that by the form of the notes the existing obligation, which was strictly one of the firm, and not of the individual members of the firm, would in any wise be altered; nor does it appear that either party understood that the obligation of the individuals was in any respect to be increased or modified. There is no reason to believe that, if the legal effect of an instrument signed by the individuals severally had been called to the attention of the parties at the time, the notes would have been executed in their present form. There is no showing that the members of the firm had property of any considerable value other than their interests in the joint enterprise, and there is no apparent reason why the claimant should have preferred an individual obligation to a firm obligation. It is therefore thought that the referee correctly ruled in receiving such evidence; and it is concluded that the evidence shows, beyond doubt, that these notes were intended to, and do, represent partnership, and not individual, obligations.

No decision has been called to my attention, and I have found none, announcing the rule that oral testimony may not be received for the purpose for which it was offered. There is a diversity of opinion as to the effect to be given to such testimony, and when it should be held that the obligation is of the partnership, and when of the individual members thereof. This diversity is fairly exemplified by the opinions in the following cases: Davis v. Turner, 9 Am. Bankr. Rep. 704, 120 Fed. 605, 56 C. C. A. 669; Strause v. Hooper (D. C.) 105 Fed. 590; In re Warren, Fed. Cas. No. 17,191; In re Herrick Fed. Cas. No. 6,-420; In re Bucyrus Machine Co., Fed. Cas. No. 2,100; In re Holbrook, Fed. Cas. No. 6,588; In re Thomas, Fed. Cas. No. 13,886.

Before passing this point, it may be observed that the terms of the written instrument should control, unless the prima facie case thus made is overcome by evidence both clear and convincing. Any other rule would open the door for fraud and double dealing.

4. The note, Exhibit 2, being No. 2 of the four $1,000 notes, dated March 1, 1902, is barred by the statute of limitations. The statutes of Idaho, and not those of Oregon, control. The other three $1,000 notes are not barred by the laws either of Oregon or of Idaho.

5. The four $1,000 notes, dated March 1, 1902, being Exhibits 1, 2, 3, and 4, are renewals of notes theretofore given by the maker, A. K. Stoddard, to the claimant, George Stoddard, as the consideration paid by the maker to the claimant for the latter's interest in Stoddard Bros. Lumber Company, the bankrupt. It is contended by the claimant that the notes were originally given for an indebtedness due from Stoddard Bros. Lumber Company to him for material purchased by the bankrupt; but, whatever may have been said or understood by the parties at the time, it is clear that the claimant, George Stoddard, who was

then a member of the firm, withdrew and alienated his interest therein in consideration of receiving the originals of these notes. In substance, the transaction was one of sale between him and his brother, A. K. Stoddard, and the notes were given for the purchase price. It was a transaction, not between the firm and George Stoddard, but between A. K. Stoddard and George Stoddard. In the course of his testimony, A. K. Stoddard said:

"George got out eight or nine years ago; about two years after Moslander came in."

Upon being asked whether there were any records showing the change in the partnership, he said:

"The record that I bought George Stoddard out and gave him notes for the amount due him."

On cross-examination he testified as follows:

"Q. Who bought George Stoddard's interest? A. I did. Q. How did you sign the notes? A. A. K. Stoddard. Q. George Stoddard did not sell his interest to the partnership? A. No; to me personally."

It is incredible that, if George Stoddard were selling out to the firm, he would not have taken an obligation of the firm, or at least an obligation signed by the individual members thereof. Moslander was entirely ignored. He knew nothing about the sale, and was not asked to sign the notes or assume any obligation. It is therefore thought that, so far as they are based upon the four notes referred to, the claims do not constitute a charge against the partnership estate.

6. The claimant held a mortgage upon real estate in Wyoming belonging to the bankrupt firm; the mortgage having been given as security to him to indemnify him against loss by reason of obligations upon which he had become surety for the partnership, and the amount of the mortgage security being $12,000. It is admitted that this mortgage was voluntarily released by the claimant in order that the bankrupt might sell and transfer the property. Out of the proceeds of the sale of this property obligations of the firm upon which the claimant was liable as a surety were paid to the aggregate amount of $11,625. To this extent the creditors were not injured by the release of the mortgage. The claimant is chargeable with the amount lost to the creditors by reason of the voluntary release, namely, $375, which amount should be deducted from his claims.

The whole matter is remanded to the referee, with directions to take such further proceedings as may be proper, consistent with the views herein stated. In one of the briefs it is suggested that attorney's fees should be allowed to counsel for the objecting creditors. I think it will be better for counsel who desire such allowance to be made to present a formal claim and have it passed upon by the referee in the first instance. If any party is aggrieved, the ruling of the referee may be reviewed by appropriate proceedings.