STRAUSE et al. v. HOOPER et al.

District Court, E. D. North Carolina. January 1, 1901.)

1. BANKRUPTCY—PARTNERSHIP—PROVABLE DEBTS.
    It is the policy of Bankr. Act 1898 to treat partnerships as distinct legal entities, and notes signed by both members of a partnership, which do not purport to be obligations of the firm, although given by the partners for money borrowed and put into the firm as capital, are not provable against the estate of the partnership in bankruptcy.

2. SAME—DISCHARGE—GROUNDS FOR REFUSAL.
    It is only on one of the grounds specified in Bankr. Act 1898, § 14b, that a court can refuse a discharge to a bankrupt.

In Bankruptcy. Petition to review decision of referee allowing the claims of E. O. Hooper and A. F. Gray to be proved against the estate of the firm of J. A. Hooper & Co., bankrupts.

J. Haywood Sawyer and P. H. Williams, for petitioners.
E. F. Aydlett, for E. O. Hooper and C. H. Gray.

PURNELL, District Judge. On June 6, 1900, the firm of J. A. Hooper & Co. were duly adjudged bankrupts on a petition filed by creditors of the firm. At the meeting of the creditors to prove claims and elect a trustee, E. O. Hooper, father of J. A. Hooper, filed a bond in the following words:

"$1,000.  Elizabeth City, N. C., May 15th, 1897.

"On demand we promise to pay to E. O. Hooper or order, without offset, one thousand dollars, with interest at six per cent. per annum. Negotiable and payable at ———. Value received. The drawer and indorser of this note hereby waive the benefit of homestead exemption as to this debt.

"J. A. Hooper. [Seal.]
"C. H. Gray. [Seal.]"

C. H. Gray is the other member of the firm of J. A. Hooper & Co. A. T. Gray, father of C. H. Gray, filed a bond for $1,500, bearing the same date, in the same words, except the amount, signed as above,—similar in every respect except the amount. Creditors of the firm or partnership of J. A. Hooper & Co. objected to these claims being allowed as claims against the partnership, and insisted they were individual liabilities of J. A. Hooper and C. H. Gray. After taking depositions, the referee held:

"That the bond of E. O. Hooper for one thousand dollars, dated the 15th day of May, 1897, is a liability of the firm of J. A. Hooper and C. H. Gray, trading as J. A. Hooper & Co.; that the said firm received the benefit from the said one thousand dollars, which went into the firm and was a part of their capital; that the bond of A. T. Gray, for fifteen hundred dollars, dated May 15, 1897, is a liability of the firm of J. A. Hooper & Co., and was cash advanced to said Hooper & Gray for their partnership business, and was a liability of said firm, being a part of the capital of said partnership."

To this the creditors excepted, and the record is certified for review under the statute.

The following facts appear in the depositions and are found by the court: In August, 1896, J. A. Hooper entered into partnership with one Gold under the firm name of Gold & Hooper. E. O. Hooper furnished or loaned his son $1,000 to purchase a half interest in the business of, and the amount was paid to, Gold. No note or bond was given for this sum during the existence of the firm of Gold & Hooper. The firm of Gold & Hooper was dissolved in May, 1897; Gold retiring, and Hooper taking the stock of merchandise, accounts, fixtures, etc., and assuming the debts of the firm. In May, 1897, J. A. Hooper and C. H. Gray formed the partnership of J. A. Hooper & Co. No written agreement appears in the record. J. A. Hooper contributed the goods, etc., he had received from Gold & Hooper, estimated to be worth about $1,200. Gray was to contribute $1,500, and his note to his father represents his contribution. This is about all of the agreement that can be gathered from the depositions. About the time the partnership was formed the notes were executed. J. A. Hooper testifies that at the time the partnership of J. A. Hooper & Co. was formed "I owed my father the one thousand dollars, and he [referring to Gray, his partner] owed his father the fifteen hundred dollars. Then we each became responsible to our fathers, A. T. Gray and E. O. Hooper, for the amounts we owed them." E. O. Hooper testifies repeatedly that he looked to his son alone to repay the money

($1,000) paid to Gold, and evidenced by the bond, which remained the same in 1897, a year after the advancement was made, though no interest had been paid. The money represented by both bonds was used by the partnership. J. A. Hooper has some individual estate, real and personal property, which he estimates to be worth about $1,250, but it does not appear whether C. H. Gray has any individual estate or not. He was not examined, though present.

Counsel propounded to witnesses questions of law, as to whether the firm assumed the debts. The court is not bound by answers to such questions, but will find the facts and apply the law to such facts. Were these firm or individual liabilities? This is the question to be determined,—a question of law arising on the facts. It is clearly the policy of the bankrupt act of 1898 to treat partnerships as legal entities which may be adjudged bankrupts in voluntary or involuntary proceedings, irrespective of any adjudication of the bankruptcy of individuals who compose such partnerships or firms. The adjudication of the bankruptcy of a partnership does not necessarily draw into the proceeding the estate of every individual member. In re Wilcox (D. C.) 2 Am. Bankr. R. 117, 94 Fed. 84; In re Gay (D. C.) 3 Am. Bankr. R. 529, 98 Fed. 870; In re Meyer, 3 Am. Bankr. R. 559, 39 C. C. A. 368, 98 Fed. 976; In re Duguid (D. C.) 3 Am. Bankr. R. 794, 100 Fed. 275. In these opinions the provisions of the statute are fully discussed,—especially in Re Meyer, by the circuit judge, who delivered the opinion of the court. In this cause the proceeding was against the firm of J. A. Hooper & Co., the legal entity, and not against the individual members composing the firm. In the case cited (In re Meyer) the petition asked for an adjudication as to the firm and each individual member of the firm, but the court held that, while the adjudication was proper as to the firm and those members thereof who participated in the acts of bankruptcy, there could be no adjudication as to a member of the firm who was not present and did not participate. The petition furnishes an illustration for the solution of the question involved. There is a widespread practice in commercial circles of adopting firm names which do not in any way indicate who compose the firm. Old firm names are retained long after the original members have passed away, for reasons sufficient to succeeding partners, sometimes for one consideration and sometimes another; but all contracts or obligations, to bind the firm, must be so expressed. Take, for instance, one of the petitioners herein, I. I. Strause and M. M. Strause, partners trading and doing business under the firm name of Southern Clothing Manufacturing Company, of Richmond, Va. A note or bond signed by I. I. Strause and M. M. Strause without any mention of or reference to the firm name, Southern Clothing Manufacturing Company, would not be provable against such partnership, nor could a suit against the firm be maintained on such note or bond. The fact that the proceeds of a loan went into the assets of the firm would not change the legal aspect of the obligation. The question would at last resolve itself into the query as to who executed the bond or contract, and to whom was the credit given. The written contract is the best evidence of this, and if parties are careless in executing notes, bills, bonds, and contracts, they must

abide the consequences. In the case at bar the fathers of the two young men evidently intended to set them up in business, and for this purpose each made to his son an advancement, for which he signed a note with his partner as surety. This appears on the bonds themselves. What expectation they had aliunde is not shown, except by the testimony quoted, which shows Hooper, the father, regarded the note as a personal obligation on the part of his son, and he looked to him alone for repayment. In fact, there is nothing in the record which shows the two bonds offered to be proved as claims against the firm of J. A. Hooper & Co. were anything more than personal and individual obligations of J. A. Hooper and C. H. Gray, which would be provable in bankruptcy against their individual estates had there been an adjudication as to them severally as individuals, but not provable against the partnership of J. A. Hooper & Co. except as to any surplus which may remain after the partnership debts shall have been paid; but this question does not and may not arise. The two bonds set out in the record are not partnership liabilities, and are not provable claims against the partnership of J. A. Hooper & Co. in this proceeding. The referee's ruling is therefore reversed. The claimants are not entitled to share with other creditors of J. A. Hooper & Co. in the distribution of the partnership assets.

There is also a petition sent up asking for a final discharge of J. A. Hooper & Co. and J. A. Hooper and C. H. Gray, to which creditors object. There has been no adjudication as to J. A. Hooper and C. H. Gray individually; hence creditors' objection to discharge is sustained. Reasons for this are so palpable they need not be stated. The objections to the discharge of the partnership of J. A. Hooper & Co. are not such as are contemplated in the act as grounds upon which a discharge may be refused. It is the duty of the court to discharge the applicant unless he has committed an offense punishable by imprisonment as provided in the act, or, with fraudulent intent, to conceal his true financial condition and in contemplation of bankruptcy, destroyed, concealed, or failed to keep books of account or records from which his true condition might be ascertained. Bankr. Act, § 14b; Id. § 2, cl. 12. The court will not seek for grounds upon which to refuse or even delay a discharge, but hear and consider them when properly presented. The court must, however, in every case see that the law and rules have been complied with. In the case at bar there is no evidence or certificate showing the rules have been observed. There is no certificate of conformity, as required by district rule 8; no proof of publication. The order for discharge is therefore postponed until the court is satisfied the law and rules have been complied with, and the bankrupts entitled to the discharge. This petition is held for further order.